FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

2008 MAR 18 AM 8:59

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

FRANK RAFAEL ENRIQUEZ,

     Plaintiff,

vs.          Case No. 2:05-cv-238-FtM-34DNF

FLORIDA DEPARTMENT OF CORRECTIONS;
JOHN DOE #1; JOHN DOE #2; JOHN DOE
#3; JOHN DOE #4; JOHN DOE #5; JOHN
DOE #6; JOHN DOE #7; JOHN DOE #8;
FNU WILLIAMS; FNU WILSON; FNU
BRUCKER; FNU RIOS; KEVIN ZETROUER,

     Defendants.
_____

**OPINION AND ORDER**[1]

**I.**

This matter comes before the Court upon review of the Motion to Dismiss filed on behalf of Defendants Rios, Brucker, Williams, and Wilson (Doc. #53, Officers' Motion) and the Motion to Dismiss filed on behalf of the Florida Department of Corrections (Doc. #56, DOC Motion). Plaintiff filed Responses (Doc. #62, Doc. #65, Doc. #66; Pl's Response) in opposition to the motions. This matter is now ripe for review.

---

[1] This is a "written opinion" under § 205(a)(5) of the E-Government Act and therefore is available electronically. However, it has been entered only to decide the matters addressed herein and is not intended for official publication or to serve as precedent.

## II.

Plaintiff, who is proceeding *pro se* and currently civilly detained at the Florida Civil Commitment Center ("FCCC"), filed a § 1983 Complaint on May 18, 2005. <u>See generally</u> Doc. #1, Complaint. The Complaint names the following Defendants in both their individual and official capacities: Florida Department of Corrections, John Doe 1, John Doe 2, John Doe 3, John Doe 4, John Doe 5, John Doe 6, John Doe 7, John Doe 8, Williams, Wilson, Brucker, Rios, and Zetauw. Complaint at 2-5. The John Doe Defendants and Defendants Williams, Wilson, Brucker, Rios, and Zetauw are alleged to be employees of the Department of Corrections who transported Plaintiff from the FCCC to outside medical appointments and to court appearances. <u>See generally</u> Complaint.

In summary, the Complaint alleges a violation of Plaintiff's constitutional rights arising from the Defendants use of shackles, a waist-chain, handcuffs, and the "black box" on Plaintiff during transport to and from the FCCC, in spite of Plaintiff's back condition. <u>Id.</u> Plaintiff states that he had back surgery on July 27, 2001. <u>Id.</u> at 7. As a result of his medical history and ongoing problems, Plaintiff's doctor wrote a medical order recommending that Plaintiff "'not wear a belly-chain or waist-chain as [sic] it causes pressure.'" <u>Id.</u> at 8. Plaintiff claims that Liberty Behavioral, Inc. and the Florida Department of Children and Families received the doctor's directive sometime in August 2001.

*Id.* Plaintiff alleges that he asked Liberty to notify the Department of Corrections about the medical directive. *Id.* Further, Plaintiff contends that he personally informed each of the Defendant transportation officers of the doctor's order and repeatedly complained to the officers during transport that the waist chain caused him severe pain. *Id.* at 8-13. Nevertheless, Plaintiff alleges that on several occasions the Defendants made Plaintiff wear the waist chain during transport, thereby subjecting him to "unnecessary and wanton infliction of severe pain" and "deliberate indifference to his health or safety." *Id.* at 9. Additionally, Plaintiff claims that Defendants Williams and Wilson applied the "full metal restraints" "extremely tight [sic] which caused Plaintiff extreme swelling and bruising." *Id.* at 11. The Complaint also alleges that on one occasion Defendants Williams and Brucker returned Plaintiff to the FCCC without taking him to his medical appointment because Plaintiff complained that the restraints were hurting him. *Id.* at 10.

As relief, Plaintiff seeks a declaration that his constitutional rights were violated, as well as, an injunction ordering the Florida Department of Corrections and its agents to comply with Plaintiff's medical orders. *Id.* at 13-14. Additionally, Plaintiff seeks monetary damages "jointly and severally" against the Defendants "and [any] further relief as it may appear that Plaintiff is entitled." *Id.* at 14-15.

## III.

In deciding a Rule 12(b)(6) motion to dismiss, the Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. Christopher v. Harbury, 536 U.S. 403, 406 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). However, the Court need not accept unsupported conclusions of law or of mixed law and fact in a complaint. Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001).

To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002); Dura Pharms., Inc. v. Broudo, 125 S. Ct. 1627, 1634 (2005). However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." See Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965, 1968-69 (2007) (citations omitted) (abrogating Conley v. Gibson, 355 U.S. 41 (1957) and stating that Conley did not set forth the minimum standard governing a complaint's survival under a motion to dismiss, rather the case "described the breadth of opportunity to

prove what an adequate complaint claims"). With respect to § 1983 cases that involve individuals entitled to assert qualified immunity, the Eleventh Circuit imposes "heightened pleading requirements." Swann v. Southern Health Partners, Inc., 388 F.3d 834, 836-838 (11th Cir. 2004)(citing Leatherman v. Tarrant County, 507 U.S. 163 (1993)); Laurie v. Ala. Court of Crim. Appeals, 256 F.3d 1266, 1275-76 (11th Cir. 2001). This heightened pleading standard requires a plaintiff to allege the facts supporting a § 1983 claim with some specificity. See GJR Investments, Inc. v. County of Escambia, 132 F.3d 1359, 1367, 1368 (11th Cir. 1998) (stressing "that the heightened pleading requirement is the law of this Circuit"). Dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, Ga., 960 F.2d 1002, 1009-10 (11th Cir. 1992). Nevertheless, as Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003) (citing Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)).

## IV.

Plaintiff filed this action as a civil detainee confined at the FCCC pursuant to the State of Florida's Involuntary Commitment of Sexually Violent Predator's Treatment and Care Act ("Jimmy Ryce Act").[2] See generally Fla. Stat. §§ 394.910-.913. As a person who is civilly committed, Plaintiff is in a position analogous to a criminally confined prisoner. See Pullen v. State, 802 So. 2d 1113, 1119 (Fla. 2001) ("the curtailment of the fundamental liberty right is implicated in both criminal proceedings and involuntary civil commitments"). Nevertheless, an individual who has been involuntarily civilly committed has "liberty interests under the due process clause of the Fourteenth Amendment to safety, freedom from bodily restraint, and minimally adequate or reasonable training" as required to ensure safety and freedom from restraint. Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996)(citing Youngberg v. Romeo, 457 U.S. 307, 322 (1982)). Thus, while residents at the FCCC who are civilly committed are "totally confined" and subject to internal regulations much like those

---

[2] Plaintiff initiated a similar § 1983 action before this Court in case number 2:02-cv-510-FTM-29-SPC while civilly detained at the FCCC as a probable cause sexually violent predator. See Officers' Motion at 1. The Court dismissed the Complaint without prejudice, noting *inter alia*, that the Complaint did not allege the Defendants applied the restraints "deliberately as punishment." See 2:02-cv-510-FTM-29-SPC, Doc. #213 at 9. Because the Court dismissed the Complaint without prejudice, Plaintiff initiated a new action by filing the Complaint *sub judice*.

established by the Florida Department of Corrections,[3] they are due a higher standard of care than those who are criminally committed. See Id. Indeed, the Eleventh Circuit Court of Appeals has held that "persons subjected to involuntary civil commitment are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Id.

A criminally confined prisoner, has an Eighth Amendment right to be free from cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 318-19 (1986). As the rights of the involuntarily civilly committed are "at least as extensive as the rights of the criminally institutionalized," actions which would violate the Eighth Amendment rights of a prisoner, would likewise constitute a violation of the due process rights of an individual who was been involuntarily civilly committed. See Dolihite, 74 F.3d at 1041. Indeed, the Eleventh Circuit has recognized that "relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed." Id.; see also Lavendar v. Kearney, 206 Fed. Appx. 860, 863 (11th Cir. 2006).

---

[3]See Fla. Stat. § 394.912(11).

V.

Title 42 U.S.C. § 1983 imposes liability on one who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that: (1) Defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). Here, none of the Defendants contend that they were not acting under the color of state law and Plaintiff alleges a violation of his due process rights stemming from the use of restraints during his transportation to and from the FCCC. See Complaint.

The United States Supreme Court has recognized that not every restriction imposed during confinement constitutes "punishment." See Bell v. Wolfish, 441 U.S. 520, 537 (1979). When determining whether a particular restriction amounts to punishment under the Due Process Clause, the court must determine whether the restriction is incident to a legitimate governmental purpose or whether the restriction is imposed as punishment. See Id. at 538. Absent an institution's expressed intent to punish a detainee, this determination "generally will turn on whether there is an alternate purpose rationally connected to the restriction," and whether the

restriction appears excessive based on the alternate purpose supporting it. <u>Id.</u> In other words, if a condition or restriction is "reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" <u>Id.</u> at 539-40. However, if it "is not reasonably related to a legitimate goal- if it is arbitrary or purposeless- a court may infer that the purpose" is punishment. <u>Id.</u> at 539. Nevertheless, in determining whether restraints are reasonably related to an institution's interest in maintaining security and order, the Court is mindful of the Supreme Court's warning that

> [s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these consideration, courts should ordinarily defer to their expert judgment in such matters.

<u>Id.</u> at 540, n. 23 (citations omitted).

### VI.

The Florida Department of Corrections and the transportation officers employed by the Department of Corrections, who received service of process, filed motions to dismiss. <u>See generally</u> DOC Motion at Doc. #56; Officers' Motion at Doc. #53. In summary, the motions raise the following arguments: the Defendants argue that the "normal use of restraints" during transport on either a pre-trial civil detainee or an inmate does not state a constitutional

-9-

claim, See DOC Motion at 5-6; Officers' Motion at 6-7, they further contend that the Eleventh Amendment bars Plaintiff's claims against the Department of Corrections and/or the Defendant transportation officers in their official capacities, see generally DOC Motion at 2; Officers' Motion at 2,9. Additionally, the Defendant transportation officers raise Qualified Immunity as a defense to those claims against them in their individual capacities. Officers' Motion at 8-9. Lastly, the Department of Corrections argues that to the extent Plaintiff predicates liability on the Department of Corrections based on the theory of *respondeat superior*, the Complaint lacks allegations of an affirmative causal connection between the Department of Corrections and the alleged constitutional deprivations. DOC Motion at 6.

### A. Eleventh Amendment Immunity

The Court turns first to Defendants' contentions that Plaintiff's claims against the Florida Department of Corrections and the officers in their official capacities are barred by the Eleventh Amendment. See DOC Motion at 2; Officers' Motion at 8-9. "The Eleventh Amendment protects a State from being sued in federal court without the State's consent." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003), cert. denied, 540 U.S. 1107 (2004). "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, however, a State cannot be sued directly in its own

name regardless of the relief sought." <u>Kentucky v. Graham</u>, 473 U.S. 159, 167, n. 14 (1985). The State of Florida has not waived sovereign immunity for § 1983 actions. <u>Zatler v. Wainwright</u>, 802 F.2d 397, 400 (11th Cir. 1986)(citing <u>Gamble v. Florida Dept. of Health and Rehab. Serv.</u>, 779 F.2d 1509, 1513-20 (11th Cir. 1986)). Thus, to the extent Plaintiff's Complaint seeks damages or other relief against the Department of Corrections, his claim is against the State of Florida and barred by the Eleventh Amendment. The Department of Corrections Motion to Dismiss is, therefore, due to be granted.

The protection provided to states under the Eleventh Amendment is also afforded to State officials sued in their official capacities, as it is well established that a suit against a governmental officer in his official capacity is the same as a suit against the entity that employs the officer. <u>Zatler</u>, 802 F.2d at 400. <u>See also Gamble</u>, 779 F.3d at 1512. However, where a plaintiff files suit against a state official in his or her official capacity and seeks prospective or injunctive relief from that official, such a claim may proceed without violating the Eleventh Amendment. <u>Graham</u>, 473 U.S. at 169, n. 18.

Here, Plaintiff has filed suit against the transportation officers who are employed by the Department of Corrections in their official capacities. Plaintiff seeks both monetary damages and injunctive relief from the these Defendants. <u>See</u> Complaint at 13-

15. The undersigned concludes that to the extent Plaintiff seeks monetary damages from the individual officers in their official capacities, such claims are barred by the Eleventh Amendment. Nonetheless, Plaintiff's claims for injunctive relief are not barred by the Eleventh Amendment. Thus, the Officers' Motion to Dismiss is due to be granted to the extent Plaintiff seeks monetary damages from the transportation officers in their official capacities, and denied to the extent Plaintiff seeks injunctive or prospective relief.

### B. Qualified Immunity

Defendants Rios, Brucker, Williams, and Wilson raise Qualified Immunity as a defense to the claims against them in their individual capacities. Officers' Motion at 8-9. Defendants explain that the Department of Children and Families, the state agency that oversees the FCCC, contracts with the Department of Corrections to provide transportation for FCCC residents. Id. at 2. Further, the Defendants state that they transported Plaintiff in the same manner they transport all pre-trial detainees and inmates, and in accordance with Department of Corrections' policy. Id. at 2.

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a

reasonable person would have known.'" Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730 (2002)). To invoke the protection afforded by qualified immunity, governmental officials must first establish that, at the time of the actions at issue, they were acting within their discretionary authority. Id. at 1234 (citing Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002)). "To establish that the challenged actions were within the scope of his discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of his duties, and (2) within the scope of his authority." Harbert Intern., Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998)(citing Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995)).

Once the governmental officials have established "that they were acting within their discretionary authority, the burden shifts to the plaintiff[] to show that qualified immunity is not appropriate." Gonzalez, 325 F.3d at 1234 (citing Vinyard, 311 F.3d at 1346). "The Supreme Court has established a two-part test to determine the applicability of qualified immunity." Cottone v. Jenne, 326 F.3d 1352, 1358 (11th Cir. 2003).

> "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." Hope, 122 S.Ct. at 2513. "If under the plaintiff's allegations, the defendants would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001).

Cottone, 326 F.3d at 1358.

Here, Defendants do not state that they were acting within their discretionary authority. In fact, other than reciting the applicable law on qualified immunity in their motion, the Defendants only assertion under their qualified immunity subsection is that "[t]here are no allegations that the Defendants acted in any manner that was not reasonable under the existing circumstances at all relevant times." Officers' Motion at 8. Because Defendants do not even suggest that they were acting within their discretionary authority,[4] the Court need not address whether Plaintiff's allegations state a constitutional violation and, if so, whether those rights were "clearly established." Thus, at this 12(b)(6) stage of litigation, the Court finds that the Defendants have failed to establish that they are entitled to the benefit of qualified immunity. The Officers' Motion to Dismiss will be denied with regard to this contention, and the parties will have the opportunity to further develop the facts.

---

[4] The Court notes that in Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988), the Eleventh Circuit Court of Appeals provided specific guidance regarding the showing necessary to establish that a particular Defendant was acting within the scope of his discretionary duty. Moreover, to establish that a Defendant was acting within his discretionary authority, "[a] bald assertion that the acts were taken pursuant to the performance of duties and within the scope of duties will not suffice" Harbert, 157 F.3d at 1282 (quoting Espanola Way Corp. v. Meyerson, 690 F.2d 827, 830 (11th Cir. 1982)).

### C. Failure to State a Claim

Next, Defendants refer the Court to Bell v. Wolfish, 441 U.S. 520, 540 (1979), and argue that the Court should dismiss the Complaint for failure to state a claim because the Complaint attempts to allege a violation stemming from "the normal use of restraints by the Department when transporting all inmates" including detainees at the FCCC. DOC Motion at 5-6; Officers' Motion at 6-7.

The Court disagrees with Defendants and finds that the Complaint contains sufficient facts to survive their motions to dismiss. The issue in this case involves the use of certain metal restraints on Plaintiff, an involuntarily committed civil detainee, during transport, despite his doctor's written medical directive that a waist chain not be used on him due to his back condition. The Complaint states that a doctor wrote a medical order for Plaintiff "prohibiting a 'waist chain or a belly chain [to be used on Plaintiff] as [sic] it causes pressure.'" Complaint at 8. Plaintiff provided the medical directive to the Department of Corrections and Liberty, Inc.[5] Id. In addition, Plaintiff states that he received a letter from the Department of Corrections acknowledging receipt of his doctor's letter. Id. Plaintiff further avers that he repeatedly personally informed each of the

---

[5]Liberty Behavioral was the contracted provider at the FCCC at the time of the actions giving rise Plaintiff's claims.

Defendant transportation officers of the doctor's order and complained to the officers during transport that the waist chain caused him severe pain. Id. at 8-13. Nevertheless, Plaintiff alleges that the Defendants consistently placed him in full restraints, including the waist chain, and that doing so served no penological purpose. Id. at 8. Moreover, Plaintiff alleges that on January 15, 2002, Defendants Williams and Wilson applied the restraints "maliciously and extremely tight" to retaliate against Plaintiff for prior complaints. Id. at 11. These allegations, which are taken as true at this stage of the proceedings, sufficiently state a claim for a violation of Plaintiff's due process rights. See Magluta v. Samples, 375 F.3d 1269, 1276 (11th Cir. 2004). Consequently, the Court will permit the parties an opportunity to further develop the facts of this action as to Defendants Rios, Williams, Wilson, and Brucker.

## VII.

Upon review of the docket, the Court notes that service of process has not been effected on Defendant Zetauw or any of the John Doe Defendants.[6] Pursuant to Federal Rule of Civil Procedure 4(m), a district court may dismiss an action *sua sponte* if service is not effected within 120 days of filing the complaint. Plaintiff's Complaint was filed on May 18, 2005. On October 2, 2006, the U.S.

---

[6] A forthcoming Order will address the issues pertaining to the John Doe Defendants.

Marshal's Office notified the Court and Plaintiff that its attempt to effect service upon Defendant Zetauw was unsuccessful. See Doc. #30. In response to Plaintiff's motion, the Court directed the Department of Corrections to provide the last known address according to their files for Defendant Zetauw. See Order at Doc. #35. On November 9, 2006, the Court re-directed service of process to the address provided by the Department of Corrections. Doc. #47. On November 22, 2006, the U.S. Marshal's Office notified the Court and Plaintiff that service could not be effected at the address provided by the Department of Corrections. Doc. #50. Since November 2006, Plaintiff has made no attempt to remedy the failure to serve the Complaint. Although Plaintiff is appearing *pro se,* "[a] plaintiff may not remain silent and do nothing to effectuate such service. At a minimum, a plaintiff should request service upon the appropriate defendant and attempt to remedy any apparent service defects of which the plaintiff has knowledge.'" Salas v. Tillman, 2006 WL 122426 (11th Cir. 2006)(quoting Fowler v. Jones, 899 F.2d 1088, 1095 (11th Cir. 1990)) (remaining citations omitted). Consequently, Defendant Zetauw is dismissed without prejudice pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The Motion to Dismiss filed on behalf of Defendants Rios, Brucker, Williams, and Wilson (Doc. #53) is **GRANTED in part and**

**DENIED in part.** With respect to the claims for monetary damages against the officers in their official capacities, the motion is **GRANTED.** In all other respects the motion is **DENIED.**

2. The Motion to Dismiss filed on behalf of the Florida Department of Corrections (Doc. #56) is **GRANTED.**

3. The Court *sua sponte* dismisses the claims against Defendant Zetauw **without prejudice** pursuant to Fed. R. Civ. P. 4(m).

4. The Clerk of Court shall enter judgment in accordance with this Order and change the caption of the case.

**DONE AND ORDERED** in Fort Myers, Florida, on this 17th day of March, 2008.

/s/ Marcia Morales Howard
MARCIA MORALES HOWARD
UNITED STATES DISTRICT JUDGE

SA: alj
Copies: All Parties of Record